**Jackie M. LEONARD, Appellant,**

v.

**Thomas J. PARRISH, III, et al., Ritchie LaVerne Kurschner, Respondents.**

No. C8–87–1386.

Court of Appeals of Minnesota.

March 8, 1988.

Thomas J. Lyons, St. Paul, for Jackie M. Leonard.

Paul A. Joyce, Terry J. Bartz, St. Paul, for Thomas J. Parrish, III, et al.

David B. Orfield, Robert E. Salmon, Minneapolis, for Ritchie LaVerne Kurschner.

Heard, considered and decided by LANSING, P.J., and NORTON and KALITOWSKI, JJ.

## OPINION

LANSING, Judge.

Appellant Jackie Leonard, a passenger on a motorcycle driven by respondent Ritchie Kurschner, was injured in a collision between the motorcycle and a car driven by respondent Thomas Parrish. The jury found both Parrish and Kurschner negligent, but reduced Leonard's recovery under Minn.Stat. § 169.974, subd. 6, because she was not wearing a helmet at the time of the accident. Leonard appeals from the denial of her motion for a new trial. We affirm.

## FACTS

On September 13, 1984, at approximately 2:00 a.m., Jackie Leonard was riding on a motorcycle driven by Ritchie Kurschner. As Leonard and Kurschner drove north on Rice Street in St. Paul, Minnesota, Parrish was driving his automobile south on the same street. In an attempt to reach a convenience store located on Rice Street, Parrish made a left turn in front of Leonard and Kurschner.

As Parrish made the left turn, the motorcycle hit the right side of the automobile. Leonard was thrown from the cycle, over the Parrish vehicle, and struck her head and body on the surface of Rice Street. She sustained a skull fracture running from her forehead to the top of her skull, a frontal lobe contusion, a swollen eye, and multiple abrasions on her arms and legs. Nerve damage caused a permanent loss of the sense of smell, which in turn caused a reduction in her sense of taste. Leonard also suffers from headaches, dizziness, blurred vision and nausea.

At trial the parties offered expert testimony on the extent of Leonard's injuries and the potential reduction in injuries had she worn a helmet. The parties earlier stipulated to the use of this expert testimony and the burden of production on whether damages could have been reduced by the use of a helmet. Under the stipulation, Leonard agreed to forfeit the opportunity to challenge the jury's right to consider the issue.

The neurologists agreed that Leonard had sustained a skull fracture, frontal lobe contusion and loss of smell, but differed on whether a helmet would have prevented most of her cerebral injuries. The parties also disputed the qualifications of the opposing experts.

The jury found Parrish 80 percent negligent and Kurschner 20 percent negligent. The jury additionally determined the percentage of damages that could have been avoided by use of a helmet and computed the damages pursuant to Minn.Stat. § 169.974, subd. 6. After the verdict was returned, the trial court discounted damages to present value under Minn.Stat. § 604.07. Leonard's damage award after discount equaled $52,062.

Leonard moved for a new trial, claiming that Minn.Stat. § 169.974 had been shown to be unconstitutional at trial; that expert testimony conclusively demonstrated that her injuries could not have been reduced through use of a helmet; that the trial court abused its discretion by limiting voir dire questions and rejecting proposed jury instructions and verdict form; and that the court erred in performing the present-value discounting function. Leonard appeals the denial of her motion.

## ISSUES

1. Does Minn.Stat. § 169.974, subd. 6, violate Leonard's equal protection right under the state and federal constitutions?

2. Is the evidence sufficient to support the jury's damage reduction under Minn. Stat. § 169.974, subd. 6?

3. Did the trial court abuse its discretion in limiting proposed jury instructions and verdict interrogatories?

4. Did the trial court err in performing the present-value discounting function?

5. Did the trial court abuse its discretion in limiting Leonard's voir dire questions relating to insurance?

## ANALYSIS

### I

On appeal Leonard contends Minn.Stat. § 169.974, subd. 6 (1986), is unconstitutional because it violates the equal protection and remedies clauses of the Minnesota State Constitution and because it is vague and unworkable. At trial Leonard's attack on the constitutionality of the statute was limited to a violation of equal protection and a failure to limit statutory provisions to a single subject expressed in the title. She did not make her vagueness or remedies clause argument at trial, in her post-trial motion, or in her statement of the case. Arguments not presented to the trial court will not be considered for the first time on appeal. *St. Paul Citizens for Human Rights v. City Council of the City of St. Paul*, 289 N.W.2d 402, 407 (Minn.1979).

Leonard maintains that raising the general issue of unconstitutionality preserves for appeal all arguments on constitutionality, not just those that are specifically asserted. This is too broad a statement of appellate review. The principles of appellate practice require that parties be bound by the theories on which the case was tried in the trial court, and alternative theories may not be presented for the first time on appeal. *Mattson v. Underwriters at Lloyds of London*, 414 N.W.2d 717, 721–22 (Minn.1987). Although the interests of justice may warrant consideration of constitutional issues for the first time on appeal in some cases, *McGuire v. C & L Restaurant Inc.*, 346 N.W.2d 605, 610 (Minn.1984), the issues in this case are insufficient to warrant the exercise of our discretionary authority. We therefore review only the constitutional issue which was raised both in the trial court and on appeal—equal protection.

The parties agree that no fundamental right or suspect class exists in this case. Absent a fundamental right or suspect class, "minimal judicial scrutiny is appropriate." *Essling v. Markman*, 335 N.W.2d 237, 239 (Minn.1983). Under this lower standard of review, "if the record indicates that the [statute] is rationally related to achievement of a legitimate governmental purpose, it should be upheld." *Id*. To survive an equal protection challenge under the "rational basis" test, three factors must be satisfied:

> (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Miller Brewing Co. v. State*, 284 N.W.2d 353, 356 (Minn.1979).

In 1967, in response to federal legislation, Minnesota adopted a mandatory helmet law for motorcycle operators and passengers. *See* Minn.Stat. § 169.974, subd. 4 (1967). However, in 1976 the federal requirement was overturned, and Minnesota in turn repealed the mandatory helmet law for adults. 1977 Minn. Laws ch. 17, § 2. An apparent compromise stemming from the repeal was the addition of subdivision 6, which now reads:

> In an action to recover damages for negligence resulting in any head injury to an operator or passenger of a motorcycle, evidence of whether or not the injured person was wearing protective headgear that complied with standards established by the commissioner of public safety shall be admissible only with respect to the question of damages for head injuries. *Damages for head injuries of any person who was not wearing protective headgear shall be reduced to the extent that those injuries could have been avoided by wearing protective headgear that complied with standards estab-*

*lished by the commissioner of public safety.*

Minn.Stat. § 169.974, subd. 6 (1986) (emphasis added).

A review of the legislative history demonstrates that the addition of subdivision 6 arose from a concern over public safety which continued after repeal of the mandatory helmet requirement. The legislature, apparently balancing personal freedom against public safety, retained in subdivision 6 a provision which was intended to encourage motorcycle safety and to protect the state's financial resources from depletion by dependent injured cyclists.

■■■ The legislative classification of motorcycle operators and passengers, who are peculiarly susceptible to head injuries, arguably promotes this goal. Encouragement of helmet use could enhance safety, reduce injuries and protect finite state financial resources. Although limiting damages for preventable head injuries may not be the best measure to achieve this goal, we cannot say that there is no rational relationship between the goal and the measure. The statute's encouragement of helmet use by limiting damages is rationally related to the legitimate governmental purpose of promoting the public safety.

The crux of Leonard's equal protection argument is the absence of a comparable damage restriction for bicyclists who do not wear helmets or automobile occupants who do not wear seatbelts. Physical distinctions exist between these classifications. Motorcycles clearly travel at much greater speeds than bicycles, and automobiles provide significantly more structural protection in collisions or other accidents. Moreover, the legislature need not address all the consequences of enactments, nor can it "strike at all evils at the same time." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).

## II

Leonard claims the evidence was insufficient to support a damage reduction under Minn.Stat. § 169.974, subd. 6, because it compels the conclusion that a helmet would not have diminished her injuries. According to Leonard, respondents' expert was incompetent to testify to reduced damages because he lacked knowledge of minimum helmet construction standards and helmet performance in accident situations. Leonard claims that only her expert possessed the requisite expertise and that he conclusively demonstrated minimum helmet safety requirements and helmet performance in accident situations.

Prior to trial, however, Leonard's attorney stipulated that he would not challenge the expert testimony or respondents' burden of production on the issue of damage reduction under Minn.Stat. § 169.974, subd. 6. The court stated on the record that the agreement allowed the jury to "receive the issue of whether or not damages could have been reduced or avoided by wearing a helmet."

■■■ The jury could reasonably have accepted the views of respondents' expert, based on his considerable experience in the neurological field and his physical examination of Leonard. The jury is in the best position to observe the expert medical testimony and weigh the evidence. If an expert's opinion has a reasonable basis in fact, the jury's decision between conflicting opinions will not be reversed. *Freeman v. Matson*, 230 Minn. 261, 271, 41 N.W.2d 249, 255 (1950). We find the evidence sufficient to support the jury's decision to reduce Leonard's damages to the extent injuries could have been prevented through use of protective headgear.

## III

■■■ The trial court is allowed considerable latitude in selecting the language in jury instructions and possesses broad discretion in determining the propriety of a specific instruction. *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986). General instructions are preferred over specific instructions to avoid jury confusion or the overemphasis of one side of the case. *Sandhofer v. Abbott–Northwestern Hospital*, 283 N.W.2d 362, 367 (Minn.1979).

The trial court rejected Leonard's request for a specific instruction on loss of enjoyment of life for damages to her senses of smell and taste, instead submitting that loss as a general element of damages. The court also rejected an instruction on Leonard's future job retraining. This damage element appears adequately covered by the special verdict question relating to her future earning capacity. Since its general instructions were adequate, the trial court did not abuse its broad discretion by limiting Leonard's proposed jury instructions.

## IV

Leonard asserts that the jury, not the trial court, is to perform the present-value discounting function required by Minn.Stat. § 604.07. This issue was decided in *Bianchi v. Nordby*, 409 N.W.2d 835, 840 (Minn.1987). The trial court did not err in computing the future damage discount.

## V

Finally, Leonard claims that the trial court abused its discretion in limiting her voir dire questioning by refusing to allow inquiry into the jurors' attitudes on the insurance crisis. Although voir dire itself was not transcribed, it appears from the trial court's recorded remarks that Leonard was permitted to inquire whether the jurors would have difficulty returning a verdict of the size requested. Leonard does not assert any prejudice from the trial court's refusal, and one commentator has suggested that specific inquiry into the insurance "crisis" may actually be detrimental to plaintiffs by reminding jurors that "all of us pay for jury verdicts through insurance premiums." Carpenter, *Discussions of Defendant's Insurance Coverage During Voir Dire: An Analysis of the Current Practice and its Origins*, 14 Wm. Mitchell L.Rev. 45, 76 (1988).

Since the court did inquire on the specific insurance companies involved in the case, and Leonard was permitted to inquire into the jurors' predispositions on the requested verdict, we cannot say that restriction of questions concerning the in-surance crisis was prejudicial or an abuse of discretion.

## DECISION

Minn.Stat. § 169.974, subd. 6, does not violate Leonard's rights under the Minnesota or United States Constitution. The evidence supports a damage reduction under the statute. In addition, the trial court did not err in limiting certain proposed jury instructions and voir dire questions, or in performing the present-value discounting function.

Affirmed.