**Andrew RUSTHOVEN, Jr.,
Petitioner, Appellant,**

v.

**COMMERCIAL STANDARD
INSURANCE COMPANY,
Respondent,**

**Western National Mutual Insurance
Company, Petitioner, Appellant.**

Nos. C5–84–1329, CO–84–1433.

Supreme Court of Minnesota.

May 23, 1986.

John Kallestad, Willmar, for Rusthoven.

Bruce D. Elliott, Minneapolis, for Western.

Theodore J. Smetak, Minneapolis, for respondent.

YETKA, Justice.

Andrew Rusthoven, Jr., and Western National Mutual Insurance Company appeal from the court of appeals and district court decisions limiting to $25,000 the liability under the uninsured motorist coverage provided by his employer's insurance policy issued by respondent Commercial Standard Insurance Company. We reverse.

On March 8, 1981, Rusthoven was injured in an accident involving a tractor-trailer unit he was driving in the course of his employment. He asserts that an approaching car crossed over the centerline, forcing him onto the shoulder of the road and causing the tractor-trailer to slide into the adjoining ditch and overturn. The car has not been identified or located. The tractor-trailer was rented by R.E.T.E.N.O. Carriers, Inc., Rusthoven's employer. Rusthoven sustained serious and allegedly permanent injury.

R.E.T.E.N.O. was insured under a truckers' policy issued by Commercial. The policy provided liability insurance, personal injury protection, and uninsured motorist coverage, and covered commercial autos owned or rented by R.E.T.E.N.O. The policy contained no schedule of either owned or rented autos, and the premium was calculated on the basis of R.E.T.E.N.O.'s gross

receipts. On the date of Rusthoven's accident, R.E.T.E.N.O. leased all 67 of its vehicles.

The relevant sections of the policy are contained in original endorsements CA 2X 17, CA 21 07, and CA 21 24. CA 2X 17, which provides uninsured motorists insurance, states in part:

Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

The declarations sheet does not set out a dollar limit of liability under uninsured motorists coverage, but refers to endorsement CA 21 07. That endorsement, entitled SPLIT UNINSURED MOTORISTS LIMITS, provides for the following liability limitations:

| | | |
|---|---|---|
| Bodily Injury | $25,000 | Each Person |
| | $50,000 | Each Accident |
| Property Damage | $ | Each Accident |

The endorsement further declares that the foregoing provision of CA 2X 17 is changed to read as follows:

Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, our limit of liability is as follows:

a. The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit shown in this endorsement for "each person".

b. Subject to the limit for "each person", the most we will pay for all damages resulting from bodily injury caused by any one accident is the limit shown in this endorsement for "each accident".

Endorsement CA 21 24, entitled CHANGES IN UNINSURED MOTORISTS INSURANCE, sets out three changes, one of which alters the same paragraph of CA 2X 17 so that it reads as follows:

Regardless of the number of insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations. *If there is more than one covered auto our limit of liability for any one accident is the sum of the limits applicable to each covered auto.*

(Emphasis added.) The parties disagree about the effect of this endorsement on the limits of the uninsured motorist coverage.

At the time of the accident, Rusthoven was the named insured on a policy covering Rusthoven's three personal vehicles and issued by Western. The stacked limits of the uninsured motorist coverage afforded by this policy amount to $75,000.

Rusthoven brought suit against both Commercial and Western in Kandiyohi County District Court. Before trial, the parties submitted to the court the issues of the limit of the uninsured motorist coverage under the Commercial policy and the order in which the Commercial and Western policies should apply to Rusthoven's claim. The judge ruled that the applicable coverage under the Commercial policy was limited to $25,000 (which Commercial had already paid) and that, the limits of the primary coverage having been exhausted, the stacked limits of the uninsured motorist coverage under the Western policy were applicable to the claim. The court set for trial the issue of the amount recoverable under the Western policy. Western then stipulated to the entry of judgment against it in the amount of $75,000. Rusthoven and Western both appealed.

A divided court of appeals affirmed the district court. *Rusthoven v. Commercial Standard Insurance Co.*, 363 N.W.2d 496 (Minn.App.1985). The majority concluded that the only reasonable interpretation of the Commercial policy limited the uninsured motorist coverage to $25,000. The dissent, however, found the policy to be ambiguous and argued that it should, therefore, be construed in the way most favorable to the insured.

The source of the difficulty here is, of course, the contradictory endorsements attached to the Commercial policy, each of

which bears the exhortation: THIS EN-DORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. The declaration sheet refers to endorsement CA 21 07 for limits of uninsured motorist coverage. CA 21 07 unequivocally states that, regardless of the number of covered autos, insureds, claims made or vehicles involved in an accident, the most Commercial will pay for bodily injury to one person in one accident is $25,000. The single split limit—i.e., $25,000 each person and $50,000 each accident—provided by CA 21 07 would be consonant with a premium calculated not on the number of insured vehicles, but on the insured's gross receipts. Endorsement CA 21 24, on the other hand, clearly states: "If there is more than one covered auto our limit of liability for any one accident is the sum of the limits applicable to each covered auto." Rusthoven and Western contend that CA 21 24 just as clearly provides for stacking one $25,000 limit for each vehicle covered at the date of the accident. Nothing in the policy explains the presence of these two apparently discordant endorsements in one policy or expressly provides for harmonizing them. Hence, the appellants argue, if CA 21 24 does not override the other endorsements, at least the endorsements are in conflict, creating an ambiguity which must be interpreted to provide the greater protection to the insured.

The policy may be read in ways that make clauses CA 21 07 and CA 21 24 harmonious. These interpretations lead to contradictory results, however, and there is no further indication which meaning was intended by the parties.

Under one possible interpretation, paragraph CA 2X 17 defines who is insured and the liability for uninsured motorists insurance, limiting the amount to that shown in the declarations. Endorsement CA 21 07 sets the limits at $25,000 for each person and $50,000 for each accident. Endorsement CA 21 24, however, indicates that there will be a different limit for uninsured motorists insurance. The endorsement provides that, if there is more than one vehicle covered by the policy, "our limit of liability for any one accident is the sum of the limits applicable to each covered auto." Since there were 67 leased vehicles insured in the present case, CA 21 24 controls and the limits of coverage under uninsured motorists insurance would be 67 times $25,000 for each person or $1,675,000.[1]

The policy could also be read in such a way that endorsement CA 2X 17 and CA 21 07 are the controlling provisions concerning the limitations of liability for uninsured motorist coverage only when one covered vehicle is involved in an accident. CA 21 24 would be construed to extend damage limits in multiple vehicle accidents to the sum of the individual limits of each covered vehicle involved in any one accident. Thus, the second sentence of CA 21 24 would be interpreted to read as follows: "If there is more than one covered auto <u>involved</u> our limit of liability for any one accident is the sum of the limits applicable to each covered auto." (Underlined word added.)

 Since CA 21 07 and CA 21 24 are irreconcilably inconsistent, the policy is ambiguous and, therefore, is to be strictly

---

1. The parties treat the issue as one of stacking. Commercial directs our attention to *Yeager v. Auto-Owners Ins. Co.*, 335 N.W.2d 733 (Minn. 1983), in which we held that the uninsured motorist coverage, for which the premium was based on a per vehicle charge, could be stacked, but that no-fault personal injury protection provided under the same garage liability policy, the premium for which was a percentage of payroll, could not be stacked. Commercial also contends that the decision in *Doerner v. State Farm Mut. Auto. Ins. Co.*, 337 N.W.2d 394 (Minn. 1983), precludes stacking here because Rusthoven, whose status as an insured rests solely on his occupancy of a covered vehicle, has no in-

suring nexus with any other vehicle leased by his employer. Stacking, however, involves the pyramiding of separate first-party coverages attributable to two or more vehicles despite policy language prohibiting stacking. In *Yeager*, as in other stacking cases, the justification for overriding the anti-stacking clause was the fact that the insurer charged a separate premium for each insured vehicle. However, if the policy itself sets the limit of the insurer's liability as the sum of the limits applicable to each covered vehicle, there is no necessity to resort to the stacking principle. The limit is fixed by the policy language, not in derogation of it.

interpreted against the insurer. One of the ancient principles of contract law is that an ambiguous contract, especially an adhesion contract, is construed against the drafter. *See* Restatement (Second) of Contracts § 206 (1982); *ICC Leasing Corp. v. Midwestern Machinery Co.*, 257 N.W.2d 551, 555 (Minn.1977). One of the fundamentals of insurance law, it follows, is that ambiguous language in an insurance policy is to be construed in favor of the insured. *See Nordby v. Atlantic Mutual Insurance Co.*, 329 N.W.2d 820, 822 (Minn.1983) ("When language of an insurance policy is ambiguous or susceptible of two meanings, it must be given the meaning which is favorable to the finding of insurance coverage."); *Security Mutual Casualty Co. v. Luthi*, 303 Minn. 161, 226 N.W.2d 878 (1975); *Hammer v. Malkerson Motors, Inc.*, 269 Minn. 563, 132 N.W.2d 174 (1964); 2 G. Couch, *Cyclopedia of Insurance Law* § 15.74 (rev. 2d ed. 1984). *See also* 1 R. Long, *The Law of Liability Insurance* § 5.10B (1985). The result of such a construction, however, must not be beyond the reasonable expectations of the insured. *See Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271 (Minn.1985); *see also* Keeton, *Insurance Law Rights at Variance with Policy Provisions*, 83 Harv. L.Rev. 961, 969 (1970) ("It seems likely, however, that, even though not often expressed, there has always been an implicit understanding that ambiguities, which in most cases might be resolved in more than just one or the other of two ways, would be resolved favorably to the insured's claim only if a reasonable person in his position would have expected coverage."); R. Keeton, *Basic Text on Insurance Law* § 6.3(a) (1971).

■ We find that liability limitation of the uninsured motorist provision of the Commercial policy is $1,675,000, which we find not to exceed the reasonable expectations of the insured. Therefore, we reverse the decision of the court of appeals.

Reversed and remanded.

COYNE, KELLEY and SIMONETT, JJ., dissent.

COYNE, Justice (dissenting).

I respectfully dissent. In my judgment the conflicting provisions of endorsements CA 21 07 and CA 21 24 are irreconcilable. Nevertheless, because I concur in the conclusion reached by both the trial court and the court of appeals that the only reasonable interpretation of the Commercial policy as a whole is that the limit of the uninsured motorist coverage is $25,000, I would affirm.

Falling back on the "ancient principle" that ambiguous language in an insurance policy is to be construed in favor of the insured, the majority holds that endorsement CA 21 24, which provides that "our limit of liability for any one accident is the sum of the limits applicable to each covered auto," controls and sets a liability limit for uninsured motorist coverage at $1,675,000. It seems to me, however, that in order for the "sum of the limits applicable to each covered auto" to constitute the limit of liability there must be something in the policy which relates the coverage to the vehicles or to the number of covered vehicles. Here the covered autos are not described in the policy declarations or listed in a schedule contained in the policy. The policy does not even designate the number of vehicles covered; it simply covers "all" owned or hired commercial vehicles. Since R.E.T.E.N.O. owns no vehicles and uses only hired vehicles, the number of covered vehicles undoubtedly fluctuates, perhaps daily. Since the policy does not identify the number of insured vehicles, the premium is based not on a per vehicle charge but on gross receipts. To be sure, the method of premium calculation does not control the construction of the language contained in the policy, but it is apparent that the basis adopted in this policy for calculating the premium does not serve to relate or connect the coverage in any way to the insured vehicles. Finally, the policy declarations refer to endorsement CA 21 07, which clearly sets out policy limits applicable to persons and accidents, not vehicles.

In *Yaeger v. Auto-Owners Insurance Co.*, 335 N.W.2d 733 (Minn.1983), we held that no-fault personal injury protection provided under a garage liability policy, the premium for which was a percentage of payroll, was a single limit coverage which could not be multipled by stacking. Just as there was in Yaeger's single coverage nothing to stack, here there is no series of limits to aggregate. Despite the reference in CA 21 24 to "the sum of the limits applicable to each covered auto," nowhere in the policy is there set out a limit of liability for uninsured motorist coverage applicable to one covered vehicle which can be added to the limit applicable to some other vehicle to make a larger sum. All dollar limitations of uninsured motorist coverage contained in the policy are applicable only to persons and accidents.

Because of the absence of any per vehicle limitation to which CA 21 24 can refer, the majority is forced to resort to the arbitrary rule that any ambiguity is construed most favorably to the insured, without regard to whether the policy as a whole supports that construction or whether the parties either intended or expected that construction. In short, it seems to me that the majority has abandoned a contract theory adopted only a year ago in *Atwater Creamery Co. v. Western National Insurance Co.*, 366 N.W.2d 271 (Minn.1985). The opinion applied the reasonable-expectations-regardless-of-ambiguity doctrine espoused by Professor Robert E. Keeton and Professor W. David Slawson.[1] While the concurring justices would have limited application of the doctrine of reasonable expectations to the resolution of disputes arising out of ambiguities, the conceded presence of an ambiguity in the Commercial policy would seem to mandate application of the doctrine of reasonable expectations under either the expanded or limited version of the doctrine.

The doctrine of reasonable expectations substitutes an objective standard for the often strained justification for reliance on arbitrary rules:

> The reasonable-expectations doctrine gives the court a standard by which to construe insurance contracts without having to rely on arbitrary rules which do not reflect real-life situations and without having to bend and stretch those rules to do justice in individual cases. As Professor Keeton points out, ambiguity in the language of the contract is not irrelevant under this standard but becomes a factor in determining the reasonable expectations of the insured, along with such factors as whether the insured was told of important, but obscure, conditions or exclusions and whether the particular provision in the contract at issue is an item known by the public generally.

*Atwater*, 366 N.W.2d at 278. Although the doctrine of protecting the insured's reasonable expectations is no doubt an outgrowth of the contract of adhesion doctrine, inherent in the doctrine of reasonable expectations is the rejection of the traditional rule that ambiguities are automatically construed most favorably to the insured:

> In our view, the reasonable-expectations doctrine does not automatically mandate either pro-insurer or pro-insured results. It does place a burden on insurance companies to communicate coverage and exclusions of policies accurately and clearly. It does require that expectations of coverage by the insured be reasonable under the circumstances. Neither of those requirements seem overly burdensome. Properly used, the doctrine will result in coverage in some cases and in no coverage in others.

*Id.*

Of course, the majority refers to *Atwater* and the doctrine of reasonable expectations. Having declared that the limits of the uninsured motorist coverage under R.E.T.E.N.O.'s policy is $1,675,000, the majority goes on to find that that limit does

---

**1.** *See* R. Keeton, *Basic Text on Insurance Law,* § 6.3(a) (1971); Keeton, *Insurance Law Rights at Variance with Policy Requirements,* 83 Harv. L.Rev. 961 (1970); and Slawson, *Standard Form Contracts and Democratic Control of Lawmaking Power,* 84 Harv.L.Rev. 529, 545 (1971).

not exceed the insured's reasonable expectations. The rule adopted in *Atwater*, however, does not provide a way to validate a decision already made under the doctrine of adhesion. The doctrine of reasonable expectations provides a method for resolving disagreements over contractual provisions on the basis of the parties' reasonable expectations about their transaction. To put it another way, the doctrine of reasonable expectations contemplates the application of an objective standard based on what parties such as R.E.T.E.N.O. and Commercial reasonably expected from their agreement when they made it, not on the subjective expectations formed by a truck driver after he has been injured in the course of his employment by one of the contracting parties.

The risk involved under a truckers' policy is a business risk. As we noted in *Yaeger*, 335 N.W.2d at 738, where the risk being insured against is a business risk—that is, the risk of injury to an employee in the course of carrying on the business—and where the premium is calculated on the insured's business activity, measured in this case by the gross receipts generated by the business, it is appropriate to say the coverage is limited to the stated amount even though several vehicles are insured under the policy. In the business context of this transaction it strikes me as highly probable that the trucking company would be surprised to learn that it had purchased for the benefit of its driver employees uninsured motorist coverage with limits calculated on the basis of the number of vehicles the company had in service at any given moment—particularly when that coverage may not be used to offset the employer's liability for workers compensation. *Cooper v. Younkin*, 339 N.W.2d 552 (Minn. 1983).

Despite the unartful assembly of the Commercial policy, I cannot conclude that the parties to the contract of insurance intended or that the insured could reasonably expect the limits of the uninsured motorist coverage to be fixed by the number of insured vehicles where neither the premium nor the stated dollar limits of coverage are related to or connected with the vehicles insured under the policy and where the number of vehicles insured is not identified in the policy and where, because of fluctuations in the number of vehicles leased by the insured trucker, neither the number of insured vehicles nor the amount of uninsured motorist coverage afforded by the policy could be ascertained in advance of an accident.

SIMONETT, Justice.

I join Justice Coyne's dissent.

KELLEY, Justice.

I join Justice Coyne's dissent.