**Nickolas CURTIS, Respondent,**

v.

**The HOME INSURANCE COMPANY, Appellant.**

**No. C1–86–313.**

Court of Appeals of Minnesota.

Aug. 19, 1986.

John L. Kallestad, Schneider & Kallestad, Willmar, for respondent.

Michael R. Quinlivan, Theodore J. Smetak, Arthur, Chapman, Michaelson & McDonough, P.A., Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

Respondent Nickolas Curtis brought this declaratory judgment action seeking a determination of his rights under an insurance policy issued by appellant The Home Insurance Company (Home) to the City of Willmar. The trial court granted respondent's motion for summary judgment, concluding that the limit of liability was the sum of the underinsured motorist coverage on all covered vehicles. We reverse.

## FACTS

Respondent, a city employee, was severely injured when the squad car he was operating collided with a vehicle driven by Gregory Wesen. Respondent has received the liability limits ($100,000) available to him under Wesen's insurance policy. He now seeks coverage under the city's policy with Home.

The Home policy covered 99 city-owned vehicles. The policy contains an underinsured motorist endorsement. Respondent was covered under this endorsement, which states that anyone occupying a covered automobile is insured. With respect to liability limits, the endorsement provides:

Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNDERINSURED MOTORISTS INSURANCE shown in this endorsement. *If there is more than one covered auto our limit of liability for any one accident is the sum of the limits applicable to each covered auto.*

(Emphasis added.) The limit of liability is stated on the first page of the endorsement as $50,000 per accident.

Home submitted affidavits of its sales representative and several city officials responsible for handling insurance matters for the city. They all stated it was intended that the maximum amount of underinsured motorist coverage available for any one accident would be $50,000.

The trial court determined that the limit of liability clause was ambiguous and that the coverage limit was the sum of the underinsured motorist coverage on all the vehicles covered by the policy.

## ISSUE

Did the trial court err in determining that the limit of liability was the sum of the underinsured motorist coverage on all covered vehicles?

## ANALYSIS

The Minnesota Supreme Court recently decided a similar question in *Rusthoven v. Commercial Standard Insurance Co.*, 387 N.W.2d 642 (Minn.1986). Rusthoven was injured while driving a truck in the course of his employment. His employer, R.E.T.E.N.O., was insured under a truckers' policy issued by Commercial. At the time of the accident, R.E.T.E.N.O. leased 67 vehicles. Rusthoven sought to collect uninsured motorist coverage under the Commercial policy.

There were several conflicting endorsements to the Commercial policy. Because the endorsements were irreconcilable, the court held the policy was ambiguous and should be construed against the drafter. *Rusthoven*, 387 N.W.2d at 644–45. The court noted, however, that "[t]he result of such a construction * * * must not be beyond the reasonable expectations of the insured." *Id.* at 645 (citing *Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271 (Minn. 1985)). The court held the limit of uninsured motorist coverage under the Commercial policy was $1,675,000. The court further found this result did not exceed the reasonable expectations of the insured. *Rusthoven*, 387 N.W.2d at 645.

The reasonable-expectations doctrine was explicitly adopted by the Minnesota Supreme Court in *Atwater*. *Atwater* involved a burglary definition that was effectively an exclusion. After discussing the doctrine of reasonable expectations, the court held that the burglary definition would not be interpreted to defeat the reasonable expectations of the purchaser of the policy. 366 N.W.2d at 278, 279. The court summarized:

The reasonable-expectations doctrine gives the court a standard by which to construe insurance contracts without having to rely on arbitrary rules which do not reflect real-life situations and without having to bend and stretch those rules to do justice in individual cases. * * [A]mbiguity in the language is not irrelevant under this standard but becomes a

factor in determining the reasonable expectations of the insured, along with such factors as whether the insured was told of important, but obscure, conditions or exclusions and whether the particular provisions in the contract at issue is an item known by the public generally. The doctrine does not automatically remove from the insured a responsibility to read the policy. It does, however, recognize that in certain instances, such as where major exclusions are hidden in the definitions section, the insured should be held only to reasonable knowledge of the literal terms and conditions. The insured may show what actual expectations he or she had, but the factfinder should determine whether those expectations were reasonable under the circumstances.

*Id.* at 278.

The doctrine has further been explained as follows:

The doctrine of reasonable expectations provides a method for resolving disagreements over contractual provisions on the basis of the parties' reasonable expectations about their transaction. To put it another way, the doctrine of reasonable expectations contemplates the application of an objective standard based on what parties * * * reasonably expected from their agreement when they made it * *.

*Rusthoven,* 387 N.W.2d at 647 (Coyne, J., dissenting).

Like the endorsements in *Rusthoven,* the limit of liability provision in the Home policy is ambiguous. *See Boroos v. Roseau Agency, Inc.,* 345 N.W.2d 788 (Minn.Ct. App.1984), *pet. for rev. denied* (Minn. Dec. 24, 1984). This case is distinguishable from *Rusthoven,* however, because here there are affidavits stating that the city intended the maximum amount of underinsured motorist coverage available for any one accident would be $50,000. There was no expectation that the limit of liability would be greater than $50,000. Thus, the trial court erred in concluding that the limit of liability was the sum of the limits applicable to each covered vehicle.

We also note that the supreme court has recently held an injured employee could not stack uninsured motorist coverage in his employer's commercial fleet policy because he was an insured only for the coverage of the truck he was occupying. *Murphy v. Milbank Mutual Insurance Co.,* 388 N.W.2d 732 (Minn.1986). Although application of *Murphy* to this case would achieve the same result, we do not think it is controlling. The Milbank policy was apparently unambiguous. No mention is made of a limit of liability clause like the one at issue here. It appears that *Murphy,* unlike *Rusthoven* and this case, is a true stacking case. *See Rusthoven,* 387 N.W.2d at 644, n. 1 (stacking principle need not be resorted to where the policy itself sets the limit of liability as the sum of the limits applicable to each covered vehicle).

**DECISION**

The trial court erred in concluding that the limit of liability was the sum of the limits applicable to all covered vehicles. There was no expectation that coverage in this situation would be other than the $50,-000 applicable to the involved vehicle.

Reversed.