# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2616

_____

| | | |
|---|---|---|
| LEECH LAKE TRIBAL COUNCIL, | * | |
| a Federally Recognized Indian Tribe, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| vs. | * | |
| | * | |
| WASHINGTON NATIONAL | * | Appeal from the United States |
| INSURANCE COMPANY, | * | District Court for the |
| an Illinois Mutual Insurance Company, | * | District of Minnesota |
| and TRUSTMARK INSURANCE | * | |
| COMPANY, an Illinois Insurance | * | |
| Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 13, 2000
Filed: September 6, 2000

_____

Before LOKEN and BRIGHT, Circuit Judges, and HAND,[1] District Judge.

_____

HAND, District Judge.

This case is before the Court on appeal from the District of Minnesota, wherein the District Court ruled on summary judgment that the term "issued", as utilized in the

_____

[1]The Honorable W. B. Hand, United States District Judge for the Southern District of Alabama, sitting by designation.

insurance contract in question, was defined by the UCC. The District Court held that the terms of the UCC "are incorporated into all negotiable instrument transactions in the state." Accordingly, the District Court ruled that the checks in question here, were not "issued" until they had been delivered as required by the UCC. We **REVERSE and REMAND** to the District Court for further proceedings consistent with the terms of this Order.

## FINDINGS OF FACT

The relevant facts of this case are rather simple. The Appellant, Leech Lake Tribal Council (Leech Lake), purchased a stop-loss insurance policy from the Appellee, Washington National Insurance Company (Washington National). Washington National is the author of the policy. According to the terms of the policy, Washington National is required to reimburse Leech Lake for certain expenses. In order for covered expenses to be reimbursable they must have actually been incurred during the coverage period and also "paid" during the coverage period. The coverage period commenced December 1, 1995 and expired November 30, 1996. The checks in question totaled $264, 266.98, and were printed by Leech Lake on November 26, 1996, prior to the expiration date. As of that date, Leech Lake did not have sufficient funds to cover the checks. Thus, the checks were not delivered to the named payees until February of 1997. After which the checks were funded and honored according to the terms of the policy.

## ISSUES OF LAW

There is no question that the expenses at issue in this case were actually incurred during the coverage period. However, the question for this Court to answer is whether Leech Lake "paid" the expenses during the coverage period, as defined and required by the terms of the policy. If so, then Washington National must reimburse Leech Lake for the amount by which the checks exceed the "stop-loss" sum provided in the policy. If not, Washington National owes Leech Lake nothing. This is a question of law which the Court will review *de novo*.

According to the policy, "'Paid' means actually funded by means of a draft or check issued by you, received by the payee, and honored. When the preceding requirements are met, the date of payment is the date the draft or check is issued."

Thus, according to the policy, the term "paid" has four elements: (1) actually funded by means of a draft or check, (2) issued by Leech Lake, (3) received by the payee, and (4) honored. Once all of these elements have been met, then according to the policy, the date of payment is the date the draft or check was issued. In other words, the date of payment 'relates back' to the date of issuance. Therefore, in order for this Court to determine when payment occurred, we must determine when the checks were "issued". If they were issued after the expiration date of November 30, 1996, then Washington National owes nothing. On the other hand, if the checks were issued prior to November 30, 1996, then Washington National must reimburse Leech Lake for the amount by which the checks exceed the "stop-loss" sum provided in the policy, even though the other elements of payment were not met until several months after the expiration of the policy period.

Washington National argues and the District Court held, that the checks were not issued until they had been delivered by Leech Lake to the named payees. The thrust of this argument is that the state of Minnesota has adopted the UCC, and the UCC controls negotiable instrument transactions. This case involves checks, which are negotiable instruments, and therefore the UCC controls in this case. According to the UCC, a check has not been "issued" until it has been delivered to the payee.

Ordinarily, such an argument would be correct, but not in this instance. Although Minnesota has adopted the UCC, Minn. Stat. §336.1-102(3) clearly states that "the effective provisions of [the UCC] may be varied by agreement." In this case the parties entered into an agreement, which was drafted by Washington National, the insurer. Therefore, any ambiguous language in the insurance policy will be construed against Washington National and in favor of Leech Lake, the insured. See Safeco Ins.

Co. v. Lindberg, 394 N.W.2d 146 (Minn. 1986). Any terms or provisions of an insurance policy which are susceptible to more than one meaning are ambiguous. Rusthoven. v. Commercial Standard Ins. Co, 387 N.W.2d 642 (Minn. 1986). For the reasons set forth below, we hold that the term "issued", as utilized in this policy for insurance, is ambiguous. One meaning of the term (the UCC definition) would require a finding that the payments were not made until after the policy period expired. Another reasonable meaning of the term would require a finding that the payments were made prior to expiration of the policy period.

Because the term "issued" is a term of art which has a very specific legal definition under the UCC, we would ordinarily apply that definition when we find the term used in a negotiable instrument transaction. However, due to the language used by Washington National when drafting the policy, a reasonable person could understand that Washington National intended to deviate from the UCC definition of the term "issued".

First, when Washington National drafted the policy it defined the term "paid". In that definition, Washington National identified the concepts of *issuance* and *receipt* separately. By doing so, Washington National has created a situation wherein a reasonable person might believe that the physical transference of the check is not an element of the term "issued". If Washington National intended to incorporate a physical transfer aspect into the term "issued", then there was no need to separately (and redundantly) delineate the terms "issued" and "receipt". Instead, Washington National could have simply used the term "issued" alone, because (as argued by Washington National) this term normally incorporates within itself a physical transfer aspect.

Secondly, Washington National argues that the payments were not made until the payees received the checks. However, the Court is of the opinion that Washington National could have very easily drafted the policy to state that the date of payment

-4-

would relate back to the date of receipt, instead of the date of issue. By separately enumerating "issued" and "received" as distinct elements of the definition of "paid", and then relating the date of payment back to the date the checks were "issued", rather than the date the checks were "received", Washington National has further provided the insured with reason to believe that the UCC definition of "issued" will not be incorporated into the policy. One can easily read this policy to mean that the date upon which a check is "issued" is wholly different from the date upon which the check is "received" by the payee. In fact, this is probably the most reasonable reading of the policy. At the very least the policy is ambiguous on this point and must therefore be read in favor of Leech Lake. See Safeco Ins. Co. v. Lindberg, 394 N.W.2d 146 (Minn. 1986).

If we are not going to apply the UCC definition of "issue" to this policy, what meaning shall we apply to the term? A fundamental axiom for the interpretation of insurance policies is that "a provision in an insurance policy is to be interpreted according to the plain, ordinary sense of what a reasonable person in the position of the insured wold have understood the words to mean." Farmers Home Mut. Ins. Co. v. Lill, 332 N.W.2d 635, 637 (Minn. 1983). Leech Lake points out that "Webster's Third New International Dictionary, 1201 (1993) defines 'issue' as, inter alia, 'the act of officially putting forth or getting out or printing (as new currency or postage stamps)***.'"[2] Based upon this definition and the fact that Washington National seemingly dissected from "issue" the "delivery" aspect of the UCC definition, Leech Lake argues that the checks in question here were "issued" when they were printed. We agree that this is one possible reading of the policy. Furthermore, because we are reading the ambiguous term against Washington National, and in favor of Leech Lake, we hold that the checks in this case were in fact issued on November 26, 1996, the date upon which the checks were printed. This date being before the expiration of the

_____

[2]Appellant's Br. at 11.

policy period, Washington National is liable to Leech Lake for the amount by which the checks exceed the "stop-loss" sum provided in the policy.

## CONCLUSION

For the reasons set forth above, we hold that this case is due to be and is hereby **REVERSED and REMANDED** to the District Court for further proceedings to determine what damages are owed to Leech Lake.[3]

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]The District Court's concerns about the possibility of Leech Lake abusively writing checks for "costs which may not even have been accrued" before the policy expired, and then distributing those checks at its leisure with no time limitations, is without foundation. The policy specifically requires the costs to be incurred during the policy period and further requires that all claims for reimbursement be submitted within one year following the expiration date.