# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2679

_____

Occidental Fire & Casualty Company

*Plaintiff - Appellant*

v.

Adam Soczynski, as Trustee for the heirs and next of kin of Amy Soczynski, deceased

*Defendant - Appellee*

Thomas Hipp; Hipp's Trucking, Inc.

*Defendant*s

_____

No. 13-2949

_____

Occidental Fire & Casualty Company

*Plaintiff - Appellant*

v.

Adam Soczynski, as Trustee for the heirs and next of kin of Amy Soczynski, deceased

*Defendant - Appellee*

Thomas Hipp; Hipp's Trucking, Inc.

*Defendant*s

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 13, 2014
Filed: September 2, 2014

_____

Before BYE, MELLOY, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

This is an insurance coverage dispute arising out of a fatal accident. The district court[1] determined a bobtail policy issued to Hipp's Trucking, Inc., provided coverage for damages arising out of a collision involving trucker Thomas Hipp's semi-tractor and trailer. The district court also determined the bobtail policy provided $1 million in coverage. We affirm.

I

On March 10, 2009, Thomas Hipp was driving his semi-tractor and trailer on a two-lane road near Ham Lake, Minnesota, after loading wind tower outriggers[2] onto the trailer. On a gradual curve in the road, Hipp's trailer crossed the center line and

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

[2]Outriggers are removable steel structures that can be attached to a trailer to make more floor space available or to distribute the weight of a load differently, allowing truck drivers to haul various types of cargo.

collided with a vehicle driven by Amy Soczynski. Amy died as a result of the collision.

At the time of the accident, Hipp's semi-tractor and trailer were insured by two separate insurance policies. The first policy was issued by Great West Insurance Company (Great West) to Airline Transportation Specialists, Inc., (ATS), a federally licensed motor carrier. Hipp had been hauling cargo exclusively for ATS for several years and had a continuous lease agreement with ATS at the time of the accident. The Great West policy was intended to cover Hipp while he was hauling commercial loads on behalf of ATS.

A second policy was issued to Hipp's Trucking by Occidental Fire & Casualty Company of North Carolina (Occidental). The Occidental policy was a non-trucking use policy, also referred to as a bobtail policy. A bobtail policy is intended to provide coverage for a trucker while a semi-tractor is being driven without a trailer, or while the trucker is operating outside the services of a federally licensed motor carrier.

Following the accident, Adam Soczynski, Amy's widower, sued Hipp in Minnesota state court alleging the accident was caused by Hipp's negligence. Although Hipp was not hauling an ATS load at the time of the accident – Hipp had purchased the wind tower outriggers to make his trailer more marketable to other motor carriers in the event he quit working for ATS – Adam nonetheless amended his complaint to add ATS as a defendant. Adam alleged Hipp was operating his semi-tractor at the time of the accident with the "permission and consent" of and "under the authority of [ATS]" pursuant to the continuous lease agreement between Hipp and ATS.

During the course of the state court action, Adam demanded the policy limits for both the Great West policy and the Occidental bobtail policy. Occidental refused to tender the limits of the bobtail policy. Notwithstanding the fact that Hipp was not

hauling a commercial load for ATS at the time of the accident, Great West decided to tender its policy limits of $1 million. Great West stipulated that its "offer and release is made with the understanding that [ATS] would maintain its denial of liability," but that "[d]ue to the possibility of exposure to a verdict greatly in excess of policy limits . . . Great West . . . made a business decision to tender its liability limits despite its available defenses." As part of the settlement, Hipp assigned any potential claims he may have against Occidental to Adam.

As an additional part of the settlement, the parties appointed an arbitrator to decide the amount of damages. The arbitrator determined the total damages from the accident were $2,750,000. The state court found the arbitrator's damage award reasonable, offset the $1 million settlement with Great West, and entered judgment against Hipp in the amount of $1,750,000. Adam agreed not to execute the judgment against Hipp personally, but reserved the right to pursue Occidental for the limits of the bobtail policy. The parties gave Occidental notice of their intent to enter into the settlement as well as a copy of the executed agreement.

After the state court settlement, Occidental filed a complaint in federal district court seeking a declaratory judgment that its bobtail policy did not provide coverage for the accident. Adam filed an answer and counterclaim. In the counterclaim, Adam asked the court to declare that the Occidental policy provided coverage for the accident, determine the policy limits to be $1 million, and award damages based on Occidental's bad faith in failing to tender its policy limits in the state court action.

Occidental and Adam both filed motions for summary judgment. In its motion, Occidental relied upon a Non-Trucking endorsement in the bobtail policy which stated "[t]his insurance does not apply at any time that [Hipp] is operating, maintaining, or using a covered auto for or on the behalf of any other person or organization." Occidental argued Hipp was operating his semi-tractor on behalf of ATS at the time of the accident, and thus the bobtail policy did not provide coverage.

-4-

Occidental further argued Adam should be judicially estopped from arguing the bobtail policy provided coverage for the accident because he had already recovered under the Great West policy after alleging Hipp was operating his truck under ATS's authority at the time of the accident. The parties also disputed the amount of coverage available under the bobtail policy based upon a conflict between the declarations page – which said the policy limits were $500,000 – and a "Monthly Payment and Reporting Endorsement" labeled Form AA 1903 – which said the policy limits were $1 million.

The district court granted Adam's motion for summary judgment and denied Occidental's motion. The district court determined Adam was not judicially estopped from pursuing coverage under the bobtail policy despite having alleged in state court that Hipp was operating his semi-tractor under the authority of ATS at the time of the accident, and despite having recovered under ATS's policy in the settlement with Great West. The district court further determined the bobtail policy's Non-Trucking endorsement did not preclude coverage because Hipp was on a personal errand to haul his own wind tower outriggers and thus not acting on behalf of ATS at the time of the accident. Finally, the district court determined the bobtail policy was ambiguous with respect to the policy limits and resolved the ambiguity against Occidental.

Following the summary judgment determination, Adam asked the court to voluntarily dismiss his bad faith claim. The district court dismissed the bad faith claim and entered a final judgment. This timely appeal followed.

II

We review the district court's grant of summary judgment de novo. Stein v. Chase Home Fin., LLC, 662 F.3d 976, 979 (8th Cir. 2011). Similarly, we review the district court's interpretation of an insurance policy de novo. Macheca Transp. v.

-5-

<u>Phila. Indem. Ins. Co.</u>, 649 F.3d 661, 667 (8th Cir. 2011). We review the district court's refusal to apply the doctrine of judicial estoppel only for an abuse of discretion, however, because the doctrine is one of equity invoked at the district court's discretion. See <u>Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.</u>, 617 F.3d 1040, 1051 (8th Cir. 2010).

A

Occidental first contends the district court abused its discretion when it declined to apply the doctrine of judicial estoppel to prevent Adam from pursuing coverage under the bobtail policy.

Judicial estoppel is a doctrine created by courts to prevent parties from taking contrary positions during the course of a lawsuit. In Minnesota (which has not formally recognized the doctrine), three conditions must be met before the doctrine would apply:

> First, the party presenting the allegedly inconsistent theories must have prevailed in its original position (a litigant is not forever bound to a losing position). Second, there must be a clear inconsistency between the original and subsequent position of the party. Finally, there must not be any distinct or different issues of fact in the proceedings.

<u>State v. Pendleton</u>, 706 N.W.2d 500, 507 (Minn. 2005) (internal quotation marks and citations omitted).[3] Importantly, with respect to whether a party has "prevailed in its original position," the Minnesota Supreme Court stated "judicial estoppel requires

---

[3]Courts in our circuit are bound to apply state law elements of judicial estoppel in a diversity case. See <u>Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.</u>, 4 F.3d 605, 608-09 (8th Cir. 1993); <u>see also</u> <u>Spencer v. Annett Holdings, Inc.</u>, __ F.3d __, __, 2014 WL 3056811, at *6 (8th Cir. July 8, 2014) (reaffirming our decision in <u>Monterey</u>).

that the party have actually previously succeeded at trial on a factual theory inconsistent to the one in question." Id.

Occidental contends the district court abused its discretion when it declined to apply judicial estoppel here because Adam presented one theory in state court, i.e., that Hipp operated his semi-tractor under the authority of ATS at the time of the accident, prevailed on such theory when Great West tendered its policy limits to settle the case, but then reversed course in federal court by contending Hipp was acting on his own behalf at the time of the accident.

We disagree the district court abused its discretion under the circumstances present in this case. Occidental has not shown Adam ever "prevailed" in state court, that is, persuaded the state court itself to adopt Adam's litigation position. The claim against Great West resulted in a settlement in which the insurer specifically stated ATS was "maintain[ing] its denial of liability," and Great West was settling as "a business decision . . . despite its available defenses." In other words, Adam permissibly raised alternate theories against both insurance carriers in state court, and then persuaded one insurer to settle before the state court ever adjudicated the merits of the claim. Under Minnesota's recitation of the doctrine of judicial estoppel, persuading an opposing party to settle prior to an adjudication on the merits is not the same as having a court adopt a litigant's position, and thus the district court was clearly within its discretion when it declined to apply the doctrine. See Pendleton, 706 N.W.2d at 507 (indicating a party must succeed "at trial" before the doctrine will apply); cf. Sunny Fresh Foods, Inc. v. Michael Foods, Inc., 205 F. Supp. 2d 1077, 1090 (D. Minn. 2002) ("Judicial estoppel does not hinge on whether the party previously argued a position, but instead hinges on whether that party was successful in having the court adopt that position.").[4]

---

[4]We note the circuit split regarding whether settling a claim is the same as persuading a court to adopt a party's position. Compare Konstantinidis v. Chen, 626

B

Occidental next contends the district court erred when it concluded the bobtail policy provided coverage to Hipp at the time of the accident. In this case, the coverage dispute turned on a phrase in an exclusion which states this "insurance does not apply at any time that [Hipp] is operating, maintaining, or using a covered auto for or on the behalf of any other person or organization." Under Minnesota law, Occidental had the burden to establish the applicability of any exclusions in the bobtail policy. Travelers Indem. Co. v. Bloomington Steel & Supply Co., 718 N.W.2d 888, 894 (Minn. 2006). Policy exclusions are "construed narrowly and strictly against the insurer." Id.

F.2d 933, 939 (D.C. Cir. 1980) ("A settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel."); Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982) ("If the initial proceeding results in settlement, the position cannot be viewed as having been successfully asserted."); Bates v. Long Island R.R. Co., 997 F.2d 1028, 1038 (2d Cir. 1993) (same) with Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 604-05 (9th Cir. 1996) (concluding a favorable settlement is the "equivalent to winning a judgment for purposes of applying judicial estoppel"); Commonwealth Ins. Co. v. Titan Tire Corp., 398 F.3d 879, 887 (7th Cir. 2004) (concluding a "favorable settlement . . . may be sufficient to show that the party to be estopped prevailed in the prior case regardless of whether a judicial decision was obtained").

Because Minnesota law requires a party to succeed "at trial" before the doctrine would apply, we need not choose a side in the circuit split. We have, however, said the "chief purpose" of the doctrine "is to protect the integrity of the judicial process." E.E.O.C. v. CRST Van Expedited, Inc., 679 F.3d 657, 681 (8th Cir. 2012). Under circumstances where a party pursues alternate theories against two parties, settles the weaker claim against one party without a court adjudication, and then pursues the stronger theory against the other party in court, we see little, if any, threat to the integrity of the judicial process.

The district court concluded Hipp was not operating his semi-tractor "for or on the behalf of" ATS at the time of the accident, but instead was operating the semi-tractor on his own behalf by hauling the wind tower outriggers he had purchased. We agree. It was undisputed that Hipp was not hauling a commercial load for ATS at the time of the accident. In addition, ATS was not paying Hipp for the use of his truck at the time of the accident. Finally, Hipp testified he had purchased the wind tower outriggers for his own benefit in the event he stopped hauling for ATS. In fact, the record showed ATS had never utilized the outriggers in the three years following the accident. Under these facts, we conclude the district court correctly determined Occidental failed to carry its burden of showing Hipp was acting "for or on the behalf of" ATS at the time of the accident.

C

Finally, Occidental contends the district court erred when it determined the bobtail policy had limits of $1 million. Significantly, Occidental concedes the bobtail policy is ambiguous with respect to the issue of the coverage limits. See Appellant's Br. at 47 ("The Occidental policy is internally inconsistent in that it has one page that states it provides $1 million in coverage, but the declarations page . . . provide[s] that its limit is $500,000."). Occidental contends, however, under Minnesota law the ambiguity is not necessarily construed against it if the result of such a construction is "beyond the reasonable expectations of the insured." Rusthoven v. Commercial Standard Ins. Co., 387 N.W.2d 642, 645 (Minn. 1986).

In Rusthoven, the Minnesota Supreme Court resolved a policy limits dispute over the uninsured motorist coverage available under a policy insuring sixty-seven leased vehicles. The court concluded two endorsements attached to the policy were irreconcilably inconsistent. One endorsement purported to limit uninsured motorist coverage to $25,000 for each person and $50,000 for each accident, but a reasonable interpretation of a separate endorsement indicated the uninsured motorist coverage

was equal to "the sum of the limits applicable to each covered auto," which was "67 times $25,000 for each person or $1,675,000." 387 N.W.2d at 644. The court noted "[o]ne of the fundamentals of insurance law . . . is that ambiguous language in an insurance policy is to be construed in favor of the insured," but added the proviso that "[t]he result of such a construction . . . must not be beyond the reasonable expectations of the insured." Id. at 645. The court found the higher amount "not to exceed the reasonable expectations of the insured" and construed the ambiguity against the insurer. Id.

Here, the district court relied upon Rusthoven to conclude the higher policy limits of $1 million did not exceed the reasonable expectations of the insured, and construed the bobtail policy's ambiguity against Occidental. Occidental argues the district court's reliance on Rusthoven was misplaced. Occidental contends the district court should have followed a subsequent decision issued by the Minnesota Court of Appeals in Curtis v. Home Insurance Co., 392 N.W.2d 44, 45 (Minn. Ct. App. 1986). In Curtis, the court of appeals applied Rusthoven but concluded an ambiguous policy should *not* be construed against the insurer. The court of appeals held the policy provided the lesser of two policy limits because there were "affidavits stating that the [insured] intended the maximum amount of underinsured motorist coverage available for any one accident would be $50,000 [the lesser limit]." 392 N.W.2d at 46. Consequently, the court concluded the insured had "no expectation that the limit of liability would be greater than $50,000." Id.

Occidental contends – similar to the situation involved in Curtis – there is record evidence in this case indicating exactly what the insured's reasonable expectations were with respect to the bobtail policy's coverage limits. Occidental relies solely upon a settlement letter prepared by Adam's attorney in January 2011. Adam's attorney represented that the information provided to him indicated the coverage limits for the bobtail policy were $500,000. Occidental contends Adam's

attorney's settlement letter demonstrates exactly what Thomas Hipp's reasonable expectations were with respect to the policy limits. We disagree.

Unlike the situation involved in <u>Curtis</u>, there is no affidavit directly from Thomas Hipp stating that he intended his bobtail policy limits to be $500,000. Nor is Hipp even directly identified as the personal source of the hearsay referenced by the plaintiff's attorney in the settlement letter with respect to the policy limits. Thus, contrary to Occidental's contention, there is no record evidence in this case indicating what Thomas Hipp's reasonable expectations were. The district court therefore did not err when it construed the admittedly ambiguous policy against Occidental to conclude it provided $1 million in coverage.

### III

We affirm the judgment of the district court.

_____