# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2342

_____

Gary Kaplan

*Appellant*

v.

Commissioner of Internal Revenue

*Appellee*

_____

Appeal from the United States Tax Court

_____

Submitted: April 14, 2015
Filed: July 29, 2015

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Gary Kaplan challenges a decision of the tax court[1] dismissing his petition and sustaining the Commissioner of Internal Revenue's (the "Commissioner") tax determinations. On appeal, Kaplan argues the court erred in holding 1) the statute of

_____

[1]The Honorable David Laro, United States Tax Court Judge.

limitations had not run, 2) Kaplan's 2009 plea agreement did not bar a civil action for unpaid taxes, and 3) the doctrine of judicial estoppel did not apply. We affirm.

I

Kaplan operated an illegal sportsbooking business called BetOnSports. The business originated in New York City, but Kaplan eventually moved it to several Caribbean islands, followed by Costa Rica in the late 1990s. In July 2004, the company went public on the London Stock Exchange. Prior to going public, Kaplan engaged in several transactions and stock transfers, resulting in $98 million being placed in two trusts (the "Bird Trusts") off the coast of France. Kaplan and his family were the beneficiaries of the Bird Trusts and Kaplan was the sole grantor. As the grantor, Kaplan was responsible for the taxable income of the trusts; however, Kaplan neglected to pay federal income or capital gains tax for the Bird Trusts for either 2004 or 2005.

In 2006, a federal grand jury indicted Kaplan for operating an illegal online gambling business within the United States. Subsequently, Kaplan accepted a plea agreement for a reduction of charges and pleaded guilty to five of the remaining charges associated with his illegal gambling enterprise. One relevant part of the plea agreement, Section 2.E, which dealt with the ability of the government to bring civil actions against Kaplan, stated:

> [N]othing contained in this document is meant to limit the rights and authority of the United States of America to take any civil, civil tax or administrative action against the defendant . . . except that the United States shall not seek civil forfeiture in connection with this case or any asset constituting or derived from the receipt of income from the BetOnSports Organization, the sale of stock in BetOnSports, PLC and/or the investment of the proceeds of any such income or sale.

In 2009, the district court held a change of plea hearing. The court specifically questioned Kaplan about the above provision in the plea agreement (Section 2.E). First, the government noted "there is nothing in the agreement . . . that this office lacks . . . the power of the government to pursue any civil, civil tax, or administration action." Then, the court asked Kaplan, "Do you understand, Mr. Kaplan, that there is a difference between a criminal tax proceeding and a civil tax proceeding?" Kaplan stated, "Yes, I do, Your Honor." The court continued, "And in this document, the U.S. Attorney's Office has agreed it will not bring any criminal tax proceeding against you; however, that doesn't preclude the initiation of any civil tax proceeding or administrative action against you." Kaplan replied, "I understand that. And we've—we've agreed to that." The court subsequently accepted the plea agreement and sentenced Kaplan to fifty-one months of imprisonment, and ordered him to forfeit $43,650,000 to the United States.

In 2012, the Commissioner issued Kaplan a notice of deficiency for failure to file and pay taxes for 2004 and 2005. In addition to being liable for self-employment tax and income tax on capital gains, Kaplan was also liable for the following penalties: failure to file timely returns, failure to pay tax in a timely manner, and failure to pay estimated tax. The taxes and penalties totaled $25,479,233 for 2004 and $11,248,856 for 2005. Kaplan challenged the Commissioner's determinations by filing a petition in the tax court. Instead of challenging the income determination, Kaplan argued 1) the statute of limitations had run on the Commissioner's ability to assess the unpaid taxes, 2) Kaplan's 2009 plea agreement barred the claim, and 3) judicial estoppel barred the Commissioner's determination. The tax court rejected all three arguments.

On the statute of limitations issue, the court noted since Kaplan failed to file a return, the period for the Commissioner to assess taxes never began to run. Furthermore, while the enforcement period is generally six years, income from illegal sources can allow for a longer enforcement period. On the 2009 plea agreement

issue, the tax court determined the agreement was unambiguous as to the ability of the government to bring a civil tax proceeding. Additionally, the court referenced the questions and answers given at the change of plea hearing, demonstrating Kaplan's knowledge and admitted understanding of the government's ability to bring a civil tax proceeding. On the issue of judicial estoppel, Kaplan argued the government's failure to object to the Presentence Report (PSR) prevented the government from bringing a civil tax proceeding against Kaplan.[2] The tax court rejected Kaplan's argument for several reasons. First, the representations in Kaplan's financial disclosure letter were his, not the government's. Second, representations of assets and liabilities are used to determine a defendant's ability to pay a fine or restitution, which was not at issue; therefore, the government had no immediate reason to object to the report. Third, even assuming the government did take an initial position, the government did not persuade the court of this position nor derive any benefit from taking the position. Finally, Kaplan did not suffer any detriment or prejudice from the government's "position" because the plea agreement explicitly preserved the government's right to bring a civil tax proceeding against Kaplan.

Having rejected Kaplan's arguments, the tax court entered a decision sustaining the Commissioner's tax and penalty determinations against Kaplan. On appeal, Kaplan raises the same three challenges that were before the tax court.

II

The statute of limitations and plea agreement issues are both issues of law reviewed *de novo*. See United States v. Mosley, 505 F.3d 804, 808 (8th Cir. 2007) (plea agreement); Smithrud v. City of St. Paul, 746 F.3d 391, 395 (8th Cir. 2014)

---

[2]The PSR contained Kaplan's financial disclosures, which did not reference any tax liabilities for 2004 or 2005. Therefore, Kaplan argues the government took the initial position that Kaplan had no tax liability, which is contrary to its current position.

(statute of limitations). A lower court's application and interpretation of the doctrine of judicial estoppel is reviewed for an abuse of discretion. Schaffart v. ONEOK, Inc., 686 F.3d 461, 469 (8th Cir. 2012).

Kaplan first argues the statute of limitations bars the government from pursuing a civil tax proceeding against Kaplan. We disagree. Generally, the Commissioner has three years after a return is filed within which to assess income tax liability against a taxpayer. See 26 U.S.C. § 6501(a). However, Kaplan's failure to file a return for tax years 2004 and 2005 allows the Commissioner to assess taxes or initiate a civil tax proceeding against him at any time. See id. § 6501(c)(3). Furthermore, even if Kaplan filed his returns, the Internal Revenue Manual (IRM) part 4.12.1.3(1) acknowledges the time period for which the Commissioner can assess taxes may be extended when the income at issue comes from an illegal source. As the tax court noted, it is apparent from the record Kaplan's income was obtained from his illegal gambling business.

Additionally, Kaplan attempts to bolster his statute of limitations challenge by claiming "management approval" (under IRM part 4.12.1.3.1) is required for any tax proceeding initiated over six years after the tax year in question. However, since Kaplan failed to raise this argument before the tax court, we are not in a position to determine this factual matter. See Hartman v. Workman, 476 F.3d 633, 635 (8th Cir. 2007) (rejecting an argument because it was not first raised before the district court). We cannot determine from the record on appeal whether the Commissioner sought and obtained management approval before initiating this tax proceeding against Kaplan. This was a matter for the tax court to consider, not us.

Kaplan's second challenge—his 2009 plea agreement bars the government from bringing a civil tax claim against him—is also without merit. The plea agreement explicitly states "nothing contained in this document is meant to limit the rights and authority of the United States of America to take any civil, *civil tax* or administrative

action against the defendant" (emphasis added). Furthermore, at the change of plea hearing Kaplan acknowledged he understood the agreement did not "preclude the initiation of any civil tax proceeding . . . against [him]." Kaplan attempts to combat these statements by claiming the plea agreement is ambiguous. This, he claims, is due to the agreement also stating the government "shall not seek civil forfeiture in connection with this case." However, the law clearly distinguishes between a "civil forfeiture" and a "civil tax proceeding." For example, a civil forfeiture action is an *in rem* proceeding brought against property, not an individual. United States v. One 1982 Chevrolet Crew-Cab Truck VIN 1GCHK33M9C143129, 810 F.2d 178, 183 (8th Cir. 1987). A civil forfeiture action is not an action to collect unpaid taxes.

Finally, Kaplan argues the doctrine of judicial estoppel prevents the government from initiating this civil tax proceeding against him. We disagree. Judicial estoppel applies where a party takes contrary positions during the course of a lawsuit. Occidental Fire & Cas. Co. v. Soczynski, 765 F.3d 931, 935 (8th Cir. 2014). The factors generally considered include:

> (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Gray v. City of Valley Park, Mo., 567 F.3d 976, 981 (8th Cir. 2009) (citing New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)).

The government did not take a "position" by failing to object to the PSR, which showed the absence of any relevant tax liability. The financial disclosures contained

within the PSR were prepared by Kaplan. Therefore, it was Kaplan, if anyone, who took the position of no tax liability being present. Furthermore, the government did not have to persuade the court to adopt Kaplan's representation—whether or not Kaplan had a tax liability was simply not an issue in dispute in his criminal proceeding. Additionally, as the tax court noted, even if we were to assume the government did take an initial position, the government did not "derive an unfair advantage" over Kaplan. Within the plea agreement, the government preserved its right to initiate a civil tax proceeding against Kaplan. Therefore, any possible unfair advantage gained was due to Kaplan's own failures, not any action (or inaction) on behalf of the government. In any event, Kaplan's representation of no tax liability was accurate at the time since no actual tax liability had yet to be determined; rather, it was a contingent liability. For all these reasons, the tax court did not abuse its discretion by refusing to apply judicial estoppel.

## III

We affirm the tax court's decision.

_____